UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO: 5:07-CV-101-R

MICHAEL EUGENE SOWELL, Deceased                                                  PLAINTIFF
BY ANNA KATHERINE PEAK, His Administratrix, et. al.

v.

RANDY K. CLARK, Individually and                                                    DEFENDANT
as Trigg County, Kentucky Sheriff

**OPINION AND ORDER**

This matter is before the Court upon Defendant's Motion for Summary Judgment (Docket #18). Plaintiff has responded (Docket #19) and Defendant has relied (Docket #20). This matter is now ripe for adjudication. For the following reasons, the Defendant's Motion for Summary Judgement is GRANTED.

**BACKGROUND**

One June 28, 2006, Michael Eugene Sowell ("Michael") was killed when he was run over by a police vehicle driven by Defendant Sheriff Randy K. Clark ("Clark"). The following facts are not in dispute. Around 3:00 am, Michael woke his mother Wanda Sowell ("Wanda") to ask her to drive him to Princeton, Kentucky. Wanda refused and Michael became upset. Michael approached Wanda with an aluminum baseball bat, but Wanda took it from him. Michael became angry and pushed Wanda, causing her to fall back against her bedroom door.

Michael then woke his father Eugene Sowell ("Eugene") to ask for a ride. Eugene believed Michael to be intoxicated and refused to drive him. He also threatened to call 911 if Michael did not leave him alone. When Michael persisted, Eugene dialed 911. The 911

1

emergency dispatcher received the call, heard yelling, but Eugene said nothing and hung up. The dispatcher called back. Wanda answered the phone and informed the dispatcher that everything was ok.

The dispatcher then contacted Clark, who drove to the Sowell home to check out the situation. Upon his arrival, Clark observed Michael on the front porch. It was around 4:00 am, dark outside, and the area was not well lit. Clark pulled up in his vehicle, shining his headlights towards Michael. Clark opened his car door. Michael approached the car with what Clark believed to be a shot gun. In fact, the object was a long steel pipe.

Around the same time, Wanda exited the house and stood watching near the carport. At some point, Eugene joined her. Wanda claims that she did not hear Clark say anything to Michael. Eugene says he heard Clark say to Michael "Stop" or "Drop it." Clark claims that he spoke directly to Michael, identifying himself and telling Michael to "Stop."

Clark reversed and accelerated to turn his vehicle to place himself on the opposite side from where Michael was approaching. As the vehicle spun, Michael came toward the front passenger door with what Clark believed to be a shot gun. Clark then realized it was not a shot gun, but a pipe. However, Clark did not have time to stop the turn and he felt a bump. Clark drove about seventy-five yards down the road to distance himself from Michael. Then he turned the vehicle around and drove back toward the house. When Clark returned to the scene, he found Michael on the ground. Michael died as a result of being hit by Clark's vehicle. A steel pipe and two butcher knives were found beside him.

The Sowells, Wanda and Eugene, Anna Katherine Peak, Michael's administratrix, and his minor children filed a complaint in federal court based on the events described above. In

their complaint, Plaintiffs allege that Michael was denied his Fourth, Eleventh, and Fourteenth Amendment rights due to Clark's excessive force and unreasonable actions in violation of 42 U.S.C. §1983. They also allege that Clark was negligent in the operation of his motor vehicle. Clark counterclaims that the Sowells negligently caused or contributed to the injuries and damages alleged by Plaintiffs in that they were aware of Michael's past history of alcohol abuse and violent behavior and nonetheless purchased alcohol for him that evening after picking him up from a court mandated Alcoholics Anonymous meeting. Clark now moves for summary judgment.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for

summary judgment: "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007). In other words, "law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Id.* at 229 (quoting *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

A court evaluating a claim of qualified immunity must first consider whether, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the facts alleged show that the officer's conduct violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Id.* Finally, a court must determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was

objectively unreasonable in light of the clearly established constitutional rights." *Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 729 (6th Cir. 2007) (internal citations omitted). If a plaintiff fails to establish any one of these elements, then qualified immunity must be granted. *Id.* (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir.2005)).

Here, Plaintiffs allege three constitutional violations. First, Plaintiffs allege that Clark used excessive force in violation of the Fourth Amendment when he turned his vehicle and came into contact with Michael. "In order to establish a claim that the alleged use of excessive force by a police officer violates the Fourth Amendment, the plaintiff must establish that he or she was unreasonably seized." *Kelley v. City of Southfield*, 2007 WL 1343265 *2 (E.D. Mich. 2007) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)). This requires a showing that both a seizure occurred and that it was unreasonable. In *Brower v. County of Inyo*, the Supreme Court explained that a seizure under the Fourth Amendment must be intentional. 489 U.S. 593, 596-97 (1989). The Court elaborated:

> Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the objection of the detention or taking, but the detention or taking itself must be willful. This is implicit in the word "seizure," which can hardly be applied to an unknowing act. . . . . In sum, the Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct.

489 U.S. at 596 (internal citations omitted). In the context of vehicular collisions, the Sixth Circuit has recognized that "an unintentional collision does not amount to a 'seizure.'" *Meals*, 493 F.3d at 725 n.5 (6th Cir. 2007) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844

5

(1998)).

There is no evidence to suggest that Clark intended physically to stop or detain Michael by running him over with his car. The collision between Clark and Michael was not intentional; rather, it was an unfortunate accident. In his deposition testimony, Clark explains that as Michael approached his vehicle, Clark backed up to put distance between himself and Michael. He decided to sharply turn his vehicle and accelerate "in an attempt to get the passenger side of my vehicle between me and Michael in case he did have a firearm, in case he did try to shoot at the vehicle." Even when viewed in a light most favorable to Plaintiffs, Clark's actions amount to at most a botched defensive tactic, not an intentional act. Plaintiffs have offered no evidence to the contrary. The case law cited by Plaintiffs is also not helpful. Accordingly, the Court finds that no "seizure" took place within the meaning of the Fourth Amendment. Because no constitutional violation occurred, the Court need not consider the remaining steps of the qualified immunity analysis. Clark is entitled to qualified immunity from Plaintiffs' Fourth Amendment claim.

It is unclear whether Plaintiffs wish to continue to pursue their Eleventh and Fourteenth Amendment claims since neither party addressed them in their briefs before the Court. Also remaining is Plaintiffs' negligence claim under state law. Therefore, the Court requests a telephonic conference to discuss the status of these remaining claims. In preparation for that conference, the Court brings to the attention of both parties the intent-to-harm standard under the Fourteenth Amendment's protection from arbitrary government action. *See Meals v. City of Memphis, Tenn.*, 493 F.3d 720 (6th Cir. 2007) (no substantive due process violation where officer did not act with intent).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiffs' Fourth Amendment claim.