UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO: 5:07-CV-101-R

MICHAEL EUGENE SOWELL, Deceased                                              PLAINTIFFS
BY ANNA KATHERINE PEAK, His Administratrix, et al.

v.

RANDY K. CLARK, Individually and                                              DEFENDANT
as Trigg County, Kentucky Sheriff

## MEMORANDUM OPINION

This matter is before the Court upon Defendant's Second Motion for Summary Judgment (Docket #25). Plaintiffs have responded (Docket #27) and Defendant has replied (Docket #28). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Second Motion for Summary Judgement is GRANTED.

## BACKGROUND

One June 28, 2006, Michael Eugene Sowell ("Michael") was killed when he was run over by a police vehicle driven by Defendant Sheriff Randy K. Clark ("Clark"). The following facts are not in dispute. Around 3:00 a.m., Michael woke his mother Wanda Sowell ("Wanda") to ask her to drive him to Princeton, Kentucky. Wanda refused and Michael became upset. Michael approached Wanda with an aluminum baseball bat, but Wanda took it from him. Michael became angry and pushed Wanda, causing her to fall back against her bedroom door.

Michael then woke his father Eugene Sowell ("Eugene") to ask him for a ride. Eugene believed Michael to be intoxicated and refused to drive him. He also threatened to call 911 if Michael did not leave him alone. When Michael persisted, Eugene dialed 911. The 911

1

emergency dispatcher received the call, heard yelling, but Eugene said nothing and hung up. The dispatcher called back. Wanda answered the phone and informed the dispatcher that everything was ok.

The dispatcher then contacted Clark, who drove to the Sowell home to check out the situation. Upon his arrival, Clark observed Michael on the front porch. It was around 4:00 a.m., dark outside, and the area was not well lit. Clark pulled up in his vehicle, shining his headlights towards Michael. Clark opened his car door. Michael approached the car with what Clark believed to be a shot gun. In fact, the object was a long steel pipe.

Around the same time, Wanda exited the house and stood watching near the carport. At some point, Eugene joined her. Wanda claims that she did not hear Clark say anything to Michael. Eugene says he heard Clark say to Michael "Stop" or "Drop it." Clark claims that he spoke directly to Michael, identifying himself and telling Michael to "Stop."

Clark reversed and accelerated to turn his vehicle to place himself on the opposite side from where Michael was approaching. As the vehicle spun, Michael came toward the front passenger door with what Clark believed to be a shot gun. Clark then realized it was not a shot gun, but a pipe. However, Clark did not have time to stop the turn and he felt a bump. Clark drove about seventy-five yards down the road to distance himself from Michael. He then turned the vehicle around and drove back toward the house. When Clark returned to the scene, he found Michael on the ground. Michael died as a result of being struck by Clark's vehicle. A steel pipe and two butcher knives were found beside him.

The Sowells, Wanda and Eugene, Anna Katherine Peak, Michael's administratrix, and his minor children filed a complaint in federal court based on the events described above. In

their complaint, Plaintiffs alleged that Michael was denied his Fourth, Eleventh, and Fourteenth Amendment rights due to Clark's excessive force and unreasonable actions in violation of 42 U.S.C. § 1983. Plaintiffs further alleged that Clark was negligent in the operation of his motor vehicle. Clark counterclaimed that the Sowells negligently caused or contributed to the injuries and damages alleged by Plaintiffs in that they were aware of Michael's past history of alcohol abuse and violent behavior and nonetheless purchased alcohol for him that evening after picking him up from a court mandated Alcoholics Anonymous meeting.

Clark then moved for summary judgment. In its November 4, 2008 Order, the Court dismissed Plaintiffs' Fourth Amendment claim based on qualified immunity. Clark now moves for summary judgment of Plaintiffs' remaining claims.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which

3

the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I. Negligence

In his second motion for summary judgment, Clark argues that he is entitled to official immunity from Plaintiffs' negligence claim. In so far as Plaintiffs' claim that Clark was negligent in his official capacity as sheriff of Trigg County, Clark is entitled to absolute official immunity. *See Jones v. Cross*, 260 S.W.3d 343, 345 (Ky. 2008) ("absent a waiver thereof, a sheriff, as a county official, has absolute official immunity at common law for torts [sic] when sued in his official capacity"). Individually, Clark is entitled to qualified immunity where he performs a discretionary act or function in good faith within the scope of his authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

A discretionary act is one "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id.* Qualified immunity is not available when an officer performs ministerial acts involving "obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* An officer fails to act with good faith when he violates "a constitutional, statutory, or other clearly established right which a person in the public

employee's position presumptively would have known was afforded to a person in the plaintiff's position, i.e., objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.* "Once the officer or employee has shown prima facie that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id.* (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991), as modified by, *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146 (6th Cir.1995)).

Clark arrived at the Sowell home in response to a 911 call made earlier that evening by Eugene. Clark argues that he performed a discretionary act when he choose to reverse and sharply turn his vehicle so as to put distance and the vehicle between himself and Michael, who he believed to be carrying a shot gun. As the Court explained in its November 4, 2008 Order, there is no evidence in the record to suggest that Clark intended to hit Michael. Accordingly, the Court finds that Clark has met his burden of showing that he is entitled to qualified immunity.

Plaintiffs argue that Clark's conduct was not discretionary, but ministerial. Plaintiffs cite several Kentucky cases in support of this contention, most notably the Kentucky Supreme Court's decision in *Jones v. Lathram*. 150 S.W.3d 50 (Ky. 2004). *Jones* involved a state trooper whose vehicle collided with an oncoming car in a blind intersection while the trooper was responding to an emergency call. *Id.* at 51. The occupant of the other car died as a result of the collision. *Id.* The trooper argued that he was entitled to qualified immunity because he made the subjective decision to respond to the emergency call and emergency driving is a discretionary act authorizing personal judgment by a trained police officer. *Id.* at 52.

5

However, the court disagreed and held that "a police officer's driving in response to an emergency call does not confer immunity on the driver." *Id.* at 53. The court further explained, "[w]e recognize that [the trooper] independently assessed the situation and responded in a manner that he determined to be appropriate. However, the act of safely driving a police cruiser, even in an emergency, is not an act that typically requires any deliberation or the exercise of judgment. Rather, driving a police cruiser requires reactive decisions based on duty, training, and overall consideration of public safety." *Id.*

The Court finds the situation described in *Jones* distinguishable from the present case. Clark was responding to an emergency call when he initially arrived at the Sowell home, but his act of hitting Michael had nothing to do with his driving in response to that call. When Clark hit Michael he was maneuvering his vehicle to distance himself from Michael and put a barrier between the two of them. This maneuver required an independent deliberation made at a time when Clark believed Michael to be approaching him with a weapon. It was not the routine exercise of driving in response to an emergency call. Therefore, the Court finds that Michael's act was discretionary.

Plaintiffs offer no direct or circumstantial evidence to show that Clark's act was performed in bad faith. In their response brief, Plaintiffs speculate that because Clark was trained to use a pepper gun, he was negligent in failing to use the device in this instance. But Clark did not have the pepper gun with him in the car and Plaintiffs offer no evidence to suggest that it was commonplace for Clark to carry to the pepper gun. Plaintiffs likewise speculate that Clark could have fired a warning shot at Michael or flashed his blue lights rather than take the action he did. Mere speculation, however, is insufficient to meet the Plaintiffs' burden in this

6

case.  Accordingly, the Court finds that Clark is entitled to qualified immunity as to Plaintiffs' negligence claim.

## II.  Fourteenth Amendment

The Fourteenth Amendment's guarantee of substantive due process protects a person's right to life against the exercise of unjustified police power.  *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998).  "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" and to prevail on such a claim, a plaintiff must prove that the police officer's conduct "shocks the conscience."  *Id.* at 846-47 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)); *see also Meals v. City of Memphis, Tenn.*, 493 F.3d 720 (6th Cir. 2007).  "[T]he measure of what is conscience shocking is no calibrated yard stick," but "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."  *Id.* at 847-48.  Deliberate indifference, meaning that actual deliberation was practical, can rise to a constitutionally shocking level.  *Id.* at 852.

Clark argues that his conduct was in no way arbitrary or shocking to the conscious.  Plaintiffs respond that Clark's conduct violated the Fourteenth Amendment because he did not clearly identify himself as a law enforcement officer and he had a history of blurred vision that prevented him from adequately assessing the situation.  Clark counters the first of these assertions with his own deposition testimony that he did identify himself to Michael, along with Eugene's testimony that he heard Clark tell Michael to "Stop" or "Drop" his weapon before he reversed and sharply turned his vehicle.  As for the assertion regarding his vision, Clark admits to having a medical history demonstrating eye surgery to repair vitreous hemorrhages, but he offers his most recent medical reports from September 2007 to confirm his eyesight as "excellent

20/20."

Nothing in the record convinces the Court that Clark's conduct in any way rose to the level of shocking the conscious or even deliberate indifference. Clark did little, if anything, to cause Michael to approach the vehicle when he did. Clark warned Michael to stop where he was. Further reflection may have revealed a more appropriate defensive tactic, such as firing a warning shot or turning on the blue lights. However, there is no evidence to suggest that Clark's judgment of maneuvering his vehicle to put distance between himself and Michael, who he believed to be approaching him with a shot gun, was meant to injure Michael. Plaintiffs offer no evidence that Clark harbored a malicious motive towards Michael. In fact, upon striking Michael, Clark promptly turned his vehicle around and returned to the scene. Therefore, the Court finds that Plaintiffs cannot sustain an action for arbitrary governmental power under the Fourteenth Amendment.

## CONCLUSION

For the foregoing reasons, Defendant's Second Motion for Summary Judgment is **GRANTED**. All claims against Defendant are dismissed. Remaining is Defendant's counterclaim against Plaintiffs.

An appropriate order shall issue.